WILLIAM WILSON, sheriff, plaintiff in error, *vs.* JACOB
   PAULSEN & COMPANY, defendants in error.

1. Though an attachment commanding the seizure of the defendant's prop-
   erty, specify, in general terms, of what it consists, still, the officer can levy
   it only upon property of the defendant, and is not authorized to seize prop-
   erty of the like kind belonging to another person, though the defendant
   has lately sold it.

2. When a commodity is priced, and is to be paid for, by the bushel, though
   the bargain be for such quantity as will make a cargo for a certain vessel
   brought by the purchaser to carry it away, the parties may, by mutual con-
   sent, upon being interfered with by an officer, stop lading with less than
   a cargo on board; and in that case, the delivery will be complete as to so
   much as is actually on board, and under the exclusive control of the pur-
   chaser.

3. On the facts in evidence, the verdict of the jury was correct, and even if
   there were slight errors of law committed by the court, there was no abuse
   of discretion in refusing a new trial.

Attachments. Levy and sale. Sales. Before Judge CHIS-
HOLM. City Court of Savannah. February Term, 1876.

Wilson, sheriff of Beaufort county, South Carolina, brought
trover against Jacob Paulsen & Company, to recover five
hundred and one bushels of rice which he claimed by virtue
of a levy made upon it by his deputy. Defendants pleaded
the general issue.

On the trial, the evidence for plaintiff was, in brief, as fol-
lows:

One Walls rented from J. J. P. Smith a place in Beaufort
county, South Carolina, known as the Beach Hill place, and
situated on the Savannah river, where he raised a large quan-
tity of rice. Finding that this was being removed before the
payment of rent, Smith sued out an attachment, which com-
manded the sheriff to " attach and safely keep all the property
of the said defendant within your county, consisting of rice,
steam engine and thrasher, mules, flats, implements of hus-
bandry, and other articles of personal property in the hands,
possession or control of the said J. E. Walls or any other per-
son, or so much thereof as may be sufficient," etc. The deputy

Wilson *vs.* Paulsen &. Company.

sheriff proceeded to the plantation, where he found the rice being thrashed and carried on board a schooner, which was lying in the river. He went on board, made an entry of levy on the rice which was there, and placed a watchman over it. In the meantime, one of defendants, Paulsen, came on board, the lines of the boat were cast loose, and it floated out into the stream. Paulsen then said that they were in Georgia water, and he would resist any attempt to take the rice. The deputy sheriff took a boat, went ashore, and entered a levy on other personal property; when he returned, the schooner was gone. It proceeded to Savannah where the rice was unloaded. There were five hundred and one bushels, and it was the rice raised on the Beach Hill place. Paulsen expressed great anxiety. on the evening of the levy to get his schooner loaded and away before the rice should be seized under attachment; he arrived in the morning of that day with his vessel; he and Walls seemed much excited; he stated that he would run the rice-mill day and night—which was unusual on account of the danger—so as to get all the rice away, and that he would pay the hands if Walls failed to do so.

The evidence for defendants was, in brief, as follows :

Walls and one Green were in partnership, owning together a store in Beaufort county. Green made arrangements with defendants to purchase goods for Walls & Green, and that firm were indebted to defendants for goods so purchased. Walls borrowed money from Green and secured its payment by a mortgage. On this was credited, every Saturday night, half the amount of the week's sales. Desiring to pay off the firm debts, Green threatened to foreclose his mortgage unless Walls would let him have all the rice on the plantation to assist in making such payment. To this he agreed. Green thereupon arranged with defendants that they should give his firm credit for all the rice he could deliver on board their schooner; and he agreed with Walls to take all the rice he (Green) could thrash on " that night," that is the night of the levy. One boat load was carried away by Paulsen; when he returned for the last load there was not quite enough rice

thrashed to fill the boat; it was therefore determined to run the mill all night, if necessary, to pay the debt to defendants. The cargoes were taken at $1 55 per bushel. Defendants considered the rice theirs as it was delivered on the schooner. The sale of both cargoes did not pay off the debt to them. Green told Paulsen that if he allowed the sheriff to take the rice on the schooner, he would do so at his own risk. Paulsen heard there would be some trouble about the rice ; he was also anxious to return to Savannah ; hence the haste exhibited. The lines of the boat were cast loose because the negroes collected on a flat-boat next to schooner, and began calling out to the sheriff, so as to arouse the fears of Paulsen that they would assist in taking the rice. The rice carried away was all delivered on board the vessel before the levy, which was made about dusk in the evening.

The evidence for plaintiff, in rebuttal, consisted of a denial of any demonstration by the negroes, and a statement that Green said, on the day after the levy, that he had nothing to do with the crops or plantation ; this was denied by Green in his testimony.

The jury found for defendants. Plaintiff moved for a new trial on the following, among other grounds :

1st. Because the verdict was contrary to law and the evidence.

2d. Because the court charged as follows: "If you find that plaintiff, by himself or deputy, levied on this rice in South Carolina, he has a right to maintain this action of trover, if you further find that the defendant in the attachment or process, by virtue of which the levy was made, had, at the time of the levy, any property in the rice."

3d. Because the court charged the jury as follows: "The said sheriff or his deputy, by virtue of said attachment or process, could levy on the property of John E. Walls only ; and if, at the time of said levy and seizure by the deputy sheriff, Sams, the title to said rice was not in the said Walls, and was in defendants, Paulsen & Company, the said defendants had a right to hold possession by any means in their

power, and were not compelled to assert their rights in the court issuing the attachment in South Carolina."

4th. Because the court charged substantially as follows: If there was no subsisting debt between Walls, or Walls & Green, and defendants, at the time of the delivery of the rice to them, and they did not receive it in payment or part payment of such debt, but for the purpose of aiding Walls to defraud his creditors, then the transfer was void as against plaintiff, and he is entitled to a verdict. Or if, at the time of delivery of the rice, defendants paid cash, or any valuable consideration other than a receipt or credit on account of a *bona fide* subsisting debt, then such a transfer would be void as against the plaintiff, representing a creditor, if the jury should find further that, at the time of the transfer, defendants had notice, or grounds for reasonable suspicion, that said transfer was made with the intention to delay or defraud creditors; and upon this question acts of defendants in endeavoring to get the rice away from the possession of Walls, or Walls & Green, may be considered.

5th. Because the court charged as follows: "If you find that Walls, or Walls & Green, were, *bona fide*, indebted to Paulsen & Company, in a valid subsisting debt, and desired to transfer said rice to them in extinguishment or part payment of the same, and the defendants had, in pursuance of said desire, actually received on board their schooner a portion of said rice, they obtained a good and valid title thereto, although the said transfer would operate to deprive other creditors of Walls, or Walls & Green, of all means of obtaining payment of their debts, and this fact was, at the time, known to Paulsen & Company."

The motion was overruled, and plaintiff excepted.

W. U. GARRARD, for plaintiff in error.

R. E. LESTER, for defendants.

BLECKLEY, Judge.

If there was any error committed in the trial of this case, it was harmless, for the verdict was the proper outcome of the law and facts involved in the litigation. The principles ruled are stated at large in the head-notes.

Judgment affirmed.