16252, 16253.　EVANS *v.* CANNON; HALL *v.* CANNON.

1. Where the owner of personal property deposits it in a warehouse and takes a warehouse receipt in which it is recited that the property has been received "to be delivered on presentation of this receipt, on pay-

ment of customary charges," the delivery of the receipt, without indorsement, to a bona fide purchaser, is a sufficient delivery of the property described therein, of which the receipt is symbolic, to vest in the purchaser title to the property; and it was not error for the trial court to admit such a receipt as proof of the plaintiff's title to the property, in his action for trespass upon the same while in the possession of the warehouseman.

2. Where a levying officer, at the procurement of and under the direction of the plaintiff in a general execution, through his agent, levies it upon the personal property of the holder of a warehouse receipt for the property, as the property of the defendant in fi. fa., who previously delivered the receipt to the suing holder, and the property is sold under that process, the sheriff and all those aiding, abetting, and assisting him in so doing, are liable in trespass to the holder of the receipt as the owner of the property, even though it appears that the warehouseman voluntarily delivered the property over to the levying officer; and where the evidence in the trial of such a case conclusively demands a finding to this effect, it is not error for the trial court to direct a verdict in favor of the plaintiff and against each of such defendants, leaving open for the jury only the question of the extent or amount of plaintiff's damages.

3. While the voluntary delivery of personal property by a warehouseman to an officer seeking to levy general process upon it as the property of one who is no longer the holder of the warehouse receipt might amount to a consent to a trespass so far as affects the special property rights of the warehouseman, the bailee, such conduct would not affect the general property rights of the holder of the receipt, in the absence of special authority therefor.

DECIDED OCTOBER 19, 1925.

Trespass; from city court of Macon—Judge Jordan. December 12, 1924.

L. H. Cannon sued American Trading Company, D. L. Evans, M. A. Norman, and W. D. Hall for trespass, alleging that Evans was sheriff of Jeff Davis county, and that defendants had jointly injured and damaged the plaintiff in a named sum by their joint trespasses and wrongs committed while acting in concert and in co-operation as set forth in the petition. He alleged that at the time of said tortious conduct he was the owner of thirty-four bales of cotton linters, which had previously been stored with said Norman as a warehouseman; that the warehouse receipts were issued in the name of Macon Oil & Produce Company; that Evans, the sheriff, acting by direction and procurement of said trading company, and said Hall, levied a described execution against Macon Oil & Produce Company, on said cotton linters; that the warehouseman, Norman, confederating with the other defendants, surrendered

said property to the sheriff; that said sheriff made sale of the property, under said process, and that said trading company and said Hall bought in the property; that said sheriff thereafter delivered it to them, and that they sold it to a person beyond the limits of the State, and it was shipped out of the State to the purchaser; that said seizure and sale were a trespass and wrong and constituted a conversion of the property of the plaintiff; that the value of the property was $2000, and reasonable hire was $500. It appears that Norman, the warehouseman, died and no personal representative of his was made a defendant.

Evans and Hall filed an answer in which they denied the substantial allegations of the petition, denied that plaintiff owned the property, admitted that the sheriff levied the fi. fa., and that the property was sold to Hall; they denied that they acted in cooperation or concert with each other. It appears that defendants filed a demurrer in the nature of a general demurrer, which was overruled, but it is not specified or sent up, so that the effect of that ruling can not be passed upon. On the trial the court directed a verdict for plaintiff, leaving open only the question as to the amount of damages. Defendants filed a motion for new trial, which was overruled, and they excepted.

*J. C. Bennett, Hall, Grice & Bloch,* for plaintiff in error.

*J. LeConte Smith, John R. L. Smith, Grady C. Harris,* contra.

JENKINS, P. J. (After stating the foregoing facts.) 1. The first ground of the amendment to the motion for a new trial was that court erred in admitting warehouse receipts, offered by the plaintiff, the ground of objection being that they were irrelevant and immaterial, and that there was no evidence of assignment of the same to plaintiff; that they could not be basis of title in the plaintiff, that they were not negotiable, and could not be symbolic of delivery of property to the plaintiff. The Civil Code (1910), § 3528, referring to pawns and pledges, provides: "Delivery of the property is essential to this bailment, but . . warehouse receipts . . or other commercial paper symbolic of property may be delivered in pledge." In *Lightsey* v. *Lee,* 8 *Ga. App.* 762 (70 S. E. 179), it was held that a warehouse receipt very similar to those involved here was a symbol of the property itself, was negotiable, and that delivery of the same was equivalent to constructive delivery of the cotton described therein, and required

warehouseman, upon presentation and payment of charges and advances, if there were any, to make actual delivery to whomsoever might hold them. And see *Planters Rice Mill Co.* v. *Merchants Nat. Bank,* 78 *Ga.* 574 (3 S. E. 327); *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 180 (29 S. E. 752). "A warehouse receipt is not in a technical sense like a bill of exchange or negotiable instrument; it merely stands in the place of the property it represents, and a delivery of the receipt has the same effect in transferring the title to the property as the delivery of the property." *Zellner* v. *Mobley,* 84 *Ga.* 746, 747 (11 S. E. 402, 20 Am. St. Rep. 390). See *Bank of Sparta* v. *Butts,* 4 *Ga. App.* 308 (1, 2, 5, 6), 310, 311 (61 S. E. 298); *Livingston* v. *Anderson,* 2 *Ga. App.* 274 (1), 278, 281 (58 S. E. 505). From what is said it follows that the receipts were properly admitted in evidence as proof of plaintiff's title.

2, 3. The second, third, and fourth special grounds raised, in various forms, the proposition that the court erred in instructing the jury to find for the plaintiff, leaving open only the question of amount of his damages. It was admitted that Evans was sheriff, that as such he levied upon and sold the property to Hall, under general fi. fa. against Macon Oil & Produce Company, and that at time of levy the property was in possession of warehouseman. The real gravamen of the defendants' defenses was that the plaintiff was not the owner at the time of levy and sale, and that, if ever he did own them, the warehouseman was *his* agent and bailee, and, as such, voluntarily surrendered possession to the sheriff, thereby absolving the defendants from any liability as trespassers. While we are impressed with the fact that the defendants do not seem to have committed any intentional wrong, and that the case appears to be one where any disposition must necessarily impose a hardship upon one side or the other of the opposing litigants, we think, under the authorities, none of the contentions made by the defendants are legally tenable; and that in view of the undisputed title of the plaintiff, of the admissions by defendants as to their conduct in the premises, and in view of the fact that the process levied was not special but general, the court did not err in the instructions complained of. "The word 'trespass' generally involves the idea of force, but, as used in the code sections above cited, it is employed in a broader sense, and comprehends any misfeasance, transgression,

or offense which damages another person's health, reputation, or property." *Williams* v. *Inman,* 1 *Ga. App.* 321 (57 S. E. 1009), citing *Cox* v. *Strickland,* 120 *Ga.* 104 (47 S. E. 912, 1 Ann. Cas. 870). "When a fi. fa. issues upon a general judgment, . . the officer is simply commanded to levy and seize generally property of the defendant, and when he acts he does so at his peril; and if he seizes property of a person other than the defendant, and thereby causes injury to an innocent party, he and all parties acting with him in procuring such a seizure are liable as joint trespassers." *Haslett* v. *Rogers,* 107 *Ga.* 239, 244 (2) (33 S. E. 44); *McDougald* v. *Dougherty,* 12 *Ga.* 613, 615; *Wallace* v. *Holly,* 13 *Ga.* 389, 392. In the case of *Farmers & Traders Nat. Bank* v. *Allen-Holmes Co.,* 122 *Ga.* 67 (49 S. E. 816), there is a full discussion of the principles involved in the instant case. The court there held that "One is liable, in an action of trespass, for causing an attachment against a debtor to be levied on a consignment of goods in the custody of a common carrier, the title to which was in a third person to whom a bill of lading . . had previously been duly assigned by such debtor; and that if the property . . was brought to sale under the attachment proceedings, such third person would be entitled to recover damages for such unlawful seizure and sale." Further, "The refined niceties of technical pleading do not obtain in Georgia. . . Nor is the petition drafted on the theory that there had been a wrongful conversion of the plaintiff's property. The suit sounds in trespass, and is for an unlawful invasion of the property rights of the plaintiff. The facts alleged in the petition amounted to an actionable trespass. . . The attachment was authority to the levying officer to seize the property of the defendant in attachment, but none whatever to seize the property of a third person, *though the defendant in attachment had lately sold it to him*" (citing *Wilson* v. *Paulsen,* 57 *Ga.* 596). "After the assignment of this bill of lading, the bank had constructive possession of the carload of corn which had been delivered to the carrier for transportation. Under the very terms of the contract of shipment, the carrier obligated itself to transport the car and hold it subject to the orders of the holder of the bill of lading, whether such holder was the party to whom the bill of lading was originally issued, or his assignee. So, at the time the car arrived at its destination, the railroad company's possession of

the corn was that of the plaintiff bank, and as bailee the company would have been liable to the bank if it had delivered the goods to the consignee without a due surrender of the bill of lading held by the bank" (citing *Hobbs* v. *Chicago Packing Co.*, 98 *Ga.* 576, 25 S. E. 584, 58 Am. St. Rep. 320). And see *Holton* v. *Taylor*, 80 *Ga.* 508 (1) (6 S. E. 15).

In the instant case, if this property had been in the actual possession of the defendant in fi. fa., the sheriff might have been protected by an application of the decision in *Hoyt* v. *Smith*, 20 *Ga. App.* 595 (93 S. E. 224). On the question of the liability of the defendants who aided the sheriff, it was held in *Williams* v. *Inman*, supra, that "'One who aids, abets, or incites, or encourages or directs by conduct or words, in the perpetration of a trespass, is liable equally with the actual trespassers,'" quoting from 28 Am. & Eng. Enc. L. (2d ed.) 566. "One who procures or assists in the commission of a trespass or does any act which ordinarily induces its commission is liable therefor as the actual perpetrator." *Burns* v. *Horkan*, 126 *Ga.* 161 (54 S. E. 946). That decision holds also that "One who commits a trespass for and in behalf of a corporation is himself liable therefor." And such is true although, being ignorant of the true owner's title, the agent may have acted in perfect good faith. "Whoever meddles with another's property, whether as principal or agent, does so at his peril, and it makes no difference that in doing so he acts in good faith." *Miller* v. *Wilson*, 98 *Ga.* 567 (1) (25 S. E. 578, 58 Am. St. Rep. 319).

As to the effect of the warehouseman's voluntary surrender of the property, the Civil Code (1910), § 4486, provides that "In all cases of bailments, where the possession is in the bailee, a trespass committed during the existence of the bailment will give a right of action to the bailee for the interference with his special property, and a concurrent right of action to the bailor for the interference with his general property." Thus, while it may be true that the voluntary surrender of the property by the warehouseman might have amounted to a waiver or consent to the trespass as against his own special property right, such would not seem to affect the right of property of the bailor, since the relationship does not impute any such power or authority. "Authority from a third person having no right to give it does not justify acts which without authority would amount to a trespass to personalty." 38 Cyc. 1065.

An application of the above-stated principles to the facts of this case compels us to hold that the action of the judge complained of was not erroneous; and the judgment is therefore

*Affirmed. Stephens and Bell, JJ., concur.*